# Falconi, Appellant, *v.* Magee.

*Attorney and client—Principal and agent—Checks—Forgery.*

1. Where an attorney at law collects money for a client, and deposits the same in his own bank account, and thereafter draws a check to the order of his client, and incloses it in an envelope addressed to his client in care of a person to whose address he had been instructed by his client to send the money, and the person to whose address the envelope was sent, opens it, forges the client's name as indorser, and collects and appropriates the proceeds of the check to his own use, the attorney will still be liable to his client for the amount of the check, inasmuch as he or his bank can recover it from the bank which paid out the money on the forged indorsement.

2. In such a case the person to whose care the envelope was addressed is not the agent of the client with authority to open the envelope and collect the check, and the client is not bound by any such action of the person to whose address he merely directed that money should be sent.

Argued May 4, 1911. Appeal, No. 151, April T., 1911, by plaintiff, from order of C. P. No. 1, Allegheny Co., Dec. T., 1908, No. 554, discharging rule for judgment for want of a sufficient affidavit of defense in case of Fiori Falconi v. Christopher Magee, Jr., and the Guardian Trust Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit for the amount of a check.

Rule for judgment for want of a sufficient affidavit of defense.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order discharging rule for judgment for want of a sufficient affidavit of defense.

*George C. Bradshaw*, for appellant.—That an agent of the payee, to receive a check, committed a fraudulent act for his own purposes will not preclude the payee from setting up the forgery: United Security Life Ins. & Trust Co. v. Bank, 185 Pa. 586; Gunster v. Scranton Illuminating Heat & Power Co., 181 Pa. 327; Welsh v. German American Bank, 73 N. Y. 424; Houser v. Nat. Bank of Chambersburg, 27 Pa. Superior Ct. 613.

Authority to receive a check is not authority to indorse it: Graham v. U. S. Savings Institution, 46 Mo. 186; Jackson v. Bank, 92 Tenn. 154 (20 S. W. Repr. 802).

If Forcucci was the plaintiff's agent, he acted entirely without the scope of his authority in forging the indorsement on the check and his principal is not liable for such action: United Security Life Ins. & Trust Co. v. Bank, 185 Pa. 586.

*John F. Tim* for appellee.—The principle relied upon by the defense in this case is, that where one of two innocent persons must suffer from the wrongdoing of a third person, that one which has accredited the third person must bear the loss: Mundorff v. Wickersham, 63 Pa. 87; Garrard v. Haddan, 67 Pa. 82; Simpson v. Bovard, 74 Pa. 351; Jeffers v. Gill, 91 Pa. 290; De Turck v. Matz, 180 Pa. 347; Pennsylvania Co. for Ins. on Lives & Granting Annuities v. Franklin Fire Ins. Co., 181 Pa. 40; Houser v. Bank, 27 Pa. Superior Ct. 613.

Even in an action by a depositor against the bank for paying a forged check, the complainant's own fault or negligence may be a good defense on the part of the bank: Houser v. Nat. Bank of Chambersburg, 27 Pa. Superior Ct. 613; Penna. Co. for Ins. on Lives & Granting Annuities v. Franklin Fire Ins. Co., 181 Pa. 40.

OPINION BY MORRISON, J., July 13, 1911:

This case was commenced by the plaintiff filing a bill in equity to No. 554, December Term, 1908, in common pleas No. 1 of Allegheny county. A demurrer to the bill was sustained on the ground that the plaintiff had an adequate remedy at law. On motion of plaintiff's counsel the case was subsequently certified to the law side of the court and there set down for trial as a case at law, against said Christopher Magee, Jr., the bill to stand as a statement of the plaintiff's cause of action and the defendant again filed a demurrer which the court overruled and fifteen days was allowed for the defendant to file an affidavit of defense. See Act of June 7, 1907, P. L. 440.

On April 6, 1910, the defendant filed an affidavit of defense and on rule for judgment for want of a sufficient affidavit of defense the court discharged the rule to which order the plaintiff excepted and a bill was sealed.

The assignments of error only raise the question of the error of the court in discharging said rule.

It is conceded that Christopher Magee, Jr., defendant, was and is an attorney at law and that he brought an action

in favor of the plaintiff against certain defendants and re-covered from them a sum of money which, after deducting fees and expenses, left in his hands a net sum of $800 belonging to the plaintiff and that he saw fit, on his own motion, to deposit said money to his own credit in the Guardian Trust Company of Pittsburg, Penna., where he did his banking. This act of the defendant made said bank his debtor for the $800, and at the same time the defendant became the debtor of Fiori Falconi, plaintiff, for said amount, and we assume that it will hardly be con-tended by anyone that she could not have maintained an action of assumpsit against the defendant and have re-covered a judgment against him for said sum, with interest for its detention, in case of his refusal and neglect to pay her said amount of money on demand. By defendant's act of depositing the money to his own credit the identity of the money was lost and he could not thereafter send to the plaintiff the identical money and he cannot deny the right of the plaintiff to sue him in assumpsit therefor.

The plaintiff was an Italian woman who could neither speak nor write the English language, and in her inter-views with the defendant she communicated with him through two persons, Domenico Forcucci and his wife, Mary, they acting as interpreters for the plaintiff. Con-sidering the plaintiff's averments in her declaration and the affidavit of defense, the conceded agreement between the plaintiff and the defendant, made through the inter-preters, was that the defendant should, when he received the money, send it to her at such address as should thereafter be furnished him by the Forcucci's, in the care of the latter.

On or about January, 1908, defendant made his check on his said banker in Pittsburg, for $800, payable to the order of Fiori Falconi, and mailed the same to her at Chicago, Illinois, in care of Domenico Forcucci, at the latter's proper address. It is practically conceded that the latter and his wife, or one of them, procured an Italian woman to impersonate Fiori Falconi, plaintiff, and one

Thomas F. Fitzgerald to identify said impersonator as the real payee of the said check and by forging the name of the plaintiff on said check thus secured payment of it from the Hibernian Banking Association of Chicago, Illinois, on January 24, 1908. The Hibernian Banking Association guaranteed the indorsement on the check and sent the same to the Franklin National Bank of Philadelphia, Penna., for collection. The latter bank guaranteed prior indorsements and sent the check to the First National Bank of Pittsburg, Penna., for collection. The latter bank also guaranteed prior indorsements and presented the check to the Guardian Trust Company of Pittsburg, Penna., the bank on which the check was drawn by the defendant. The Guardian Trust Company paid the amount represented by the check out of the funds of the bank credited on its books to the defendant, and charged the amount so paid on said forged indorsement to the account of the defendant. We say "forged" indorsement advisedly because that fact is averred in the plaintiff's declaration and the affidavit of defense does not deny that the plaintiff's name was forged on the back of the check. And the affidavit goes further and admits that the defendant believes that the indorsement was a forgery. Upon the above facts the question naturally arises, why should not the rule for judgment for want of a sufficient affidavit of defense have been made absolute? The learned counsel for the defendant contends that the latter is not liable by reason of the rule of law that, "When one of two innocent persons must suffer from the wrongdoing of a third person, that one which has accredited the third person must bear the loss. Or, as otherwise stated, where one of two innocent persons must suffer from the fraud of a third person, he who gives the wrongdoer the means of perpetrating the fraud must bear the loss." This rule is sound and will hardly be controverted by any lawyer of the present day, but has it any application to the case in hand? Who is the innocent person who must suffer in this case if the plaintiff recovers? Surely it is not the

defendant because he has as yet lost nothing.  His banker has paid the check on the forged indorsement of the plaintiff's name thereon, and charged said payment to the defendant, but the bank is clearly liable to the defendant for every dollar so paid on said check, with interest thereon, unless the defendant has done or omitted to do something which releases the bank or works an estoppel against the defendant.  The defendant never authorized the bank to pay said check, except on the genuine order of the plaintiff.  Now if the defendant can lawfully recover the money improperly paid by the bank on the check, why should he refuse, and be protected by the courts in his refusal, to pay the plaintiff the money which he surely owes her?  His banker will not suffer because it has legal recourse to the three prior indorsing banks, each of which guaranteed the indorsement of the forged name of the plaintiff on the check and each of said banks can have recourse to its prior indorsers till it is traced back to the Hibernian Banking Association which caused all of the trouble in this matter by allowing an imposter to impersonate the plaintiff and guaranteed the forged indorsement of the plaintiff's name by said imposter.  The latter bank is liable to make good the money paid on the forged indorsement because of its negligence in accepting and guaranteeing the forged indorsement of the name of the plaintiff.  And it has recourse to the parties who perpetrated the fraud and induced it to pay the check and guarantee the indorsement of the name of the plaintiff thereon.  The defendant has not paid the plaintiff a dollar of the $800 which he owes her, nor has he lost it.  Legally, every dollar of it is as yet in the hands of his banker in Pittsburg, and it will not avail said banker to reply to the defendant's demand for said money that it was paid out on the forged indorsement of the name of the plaintiff.

But the learned court below, in discharging the rule, says: "The relation between the plaintiff and defendant is not that of debtor and creditor but it is that of attorney

and client, and Mr. Magee was the custodian of Mrs. Falconi's money, and followed her instructions to the letter." Let us see if this is sound.   There is nothing in this record upon which to base the assumption that Mrs. Falconi ever authorized the defendant to place her money to his credit in a bank and thus render the bank his debtor and himself her debtor for the amount thereof, and then send his personal check to her for said amount.   The averment of plaintiff in the declaration is that the money was to be sent her in care of Forcucci, and if this had been literally done, and the money had been received by the latter and appropriated to his own use, there would be some force in the position taken by the court.   In our opinion, when the defendant deposited the plaintiff's money in the bank to his own credit, he did then at least become the debtor of the plaintiff, and if she sees fit to rely on an action of assumpsit for the recovery of her money, it does not lie in the defendant's mouth to complain because this record shows that if he settled the case and recovered her money he was to send the money to her.   We do not mean to censure the defendant for the course he pursued in remitting to the plaintiff, as it must be conceded that he followed the usual method of attorneys in such cases, but he is making a technical defense and he must not be allowed to get away from the letter of his agreement with the plaintiff. Sending a check was not a literal compliance with his contract with her.

Again, there is nothing in this record to show that Forcucci was the agent of the plaintiff to such an extent that he could open her letter, take out the check and have it indorsed and procure the money thereon.   Is it possible that when a client directs his attorney to send his mail in care of a person named, that the latter becomes the agent of the former so that he can open the letters and use their contents?   Where is the law to be found which imputes negligence to a man for having his letters directed to him in care of a person named?   We are of opinion that the affidavit of defense is entirely insufficient to prevent judg-

ment and we will briefly call attention to some of the authorities which we think fully sustain this conclusion.

First, as to the agency of Forcucci: The defendant, in his affidavit of defense, avers: "That the said plaintiff, through the said Forcucci, her agent as aforesaid, informed the defendant that she was about to leave the vicinity of Pittsburg in company with said Forcucci and his family, and that when said settlement was completed the defendant should forward the money accruing to her out of said settlement to such a place and address as he, the said Forcucci, acting as her agent, should direct the defendant by letter." It is quite clear from defendant's own version of it in his affidavit of defense that Forcucci only had authority to direct that plaintiff's letter should be sent to her in his care. Anything done by Forcucci beyond the mere receipt and care of her letter was entirely beyond the scope of the agency. The Negotiable Instrument Act of May 16, 1901, P. L. 194, contains a pertinent provision, sec. 23, in regard to forged signatures: "When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through, or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

How can the plaintiff be bound by the unauthorized action of her agent, acting clearly outside the scope of his employment? In Welsh v. German American Bank, 73 N. Y. 424, the plaintiff's own bookkeeper could not bind him by presenting checks for his signature and then forging the payee's name. And in our own case of Houser v. National Bank of Chambersburg, 27 Pa. Superior Ct. 613, the plaintiff was not precluded by the acts of his own attorney in forging the payee's name on the check. In that case there is an interesting opinion by President Judge RICE which we think sustains the position we have

taken in the present case. That was a rule for judgment for want of a sufficient affidavit of defense and the following, from the syllabus of the case, is sustained by the opinion: "The contract between a banker and his customer is to pay the customer's check or bills to the person or persons designated by the customer, and none other, and if a check or bill is payable to order, the banker has only authority to pay it to the payee or to another person who becomes the holder by genuine indorsement.

"The reason of the rule that when a bank pays a depositor's check on a forged indorsement or raised check, it is held to have paid it out of its own funds and cannot charge the payment to the depositor's account, is that there is an implied agreement by the bank with its depositor that it will not disburse the money standing to his credit except on his order."

In United Security, Life Ins. and Trust Co. v. Bank, 185 Pa. 586, we find the law, which we think controls the present case, very clearly stated in an opinion by Mr. Justice MITCHELL. We quote from the syllabus of that case. "The rule that knowledge or notice of fraud to an agent in the course of his employment is notice to the principal does not apply where the agent, through notice to whom knowledge is to be imputed to the plaintiff, is himself the author of the fraud.

"It is the duty of an agent to communicate all material information to his principal, and the presumption is that he has done so; but no agent who is acting in his own antagonistic interest, or has committed a fraud by which his principal is affected, can be presumed to have disclosed such fraud.

"A banker's contract with his depositor is to pay the latter's checks only to the payee, or one who claims through a genuine indorsement. . . .

"A depositor, on return by the bank of its paid checks, is not bound to examine them to see that the indorsements are correct."

The above case seems to us to control the pivotal ques-

tion in the present case. See also Gunster v. Scranton Illuminating Heat and Power Co., 181 Pa. 327.

While it is true that plaintiff's own fault or negligence may be a good defense on the part of a bank for paying a forged check, we can discover in the present record no evidence of fault or negligence on the part of the plaintiff. Her course appears to have been above question and all of the trouble was caused by the criminal acts of the Forcuccis and their confederates. In our opinion, the decisions are conclusive that their criminal acts cannot be imputed to this plaintiff. She was not bound to infer that her agent appointed for a very simple and limited purpose, to wit, to simply receive and care for her letters, would turn forger and rob her of the contents of the letters. We have searched the record in vain for any act of the plaintiff which will estop her from looking to the defendant for her money. We believe that the law of Pennsylvania, as interpreted by the courts, entitles this plaintiff, upon the declaration and the affidavit of defense, to a judgment for the full amount of her claim, with interest and costs.

The assignments of error are sustained, the judgment is reversed, the rule is reinstated and the court below is directed to make it absolute and grant judgment in favor of plaintiff and against defendant for the full amount of her claim, with interest and costs, unless sufficient equitable or legal reasons shall hereafter appear why the same should not be done.

RICE, P. J., and HEAD, J., dissent.