# Marcus, Appellant, *v.* People's National Bank.

*Banks and banking—Check drawn to nonexisting person—Fraud—Two innocent persons rule.*

1. A depositor cannot recover from a bank the amount of a check paid out of his account where it appears that the depositor was fraudulently induced to draw a check to a nonexisting person to pay for a mortgage, and that the person who perpetrated the fraud took the check, indorsed upon it the name of the fictitious person, and secured payment of the check in this way to himself.

2. Such a case is one for the application of the rule that as between two innocent parties, he who by his acting makes loss possible, must bear it.

Argued March 2, 1914. Appeal, No. 37, March T., 1914, by plaintiff, from order of C. P. Lackawanna Co., Jan. T., 1911, No. 518, refusing to take off compulsory nonsuit in case of Adolph Marcus v. People's National Bank. Before ORLADY, HEAD, PORTER and HENDERSON, JJ. Affirmed.

Assumpsit to recover the amount of charges against plaintiff's account by reason of the alleged wrongful payment of certain checks. Before STAPLES, P. J., specially presiding.

At the trial the court entered a compulsory nonsuit, charging in part as follows:

In the year 1908 there lived in the city of Scranton a merchant by the name of Adolph Marcus, who is the plaintiff in this present action, and he became acquainted with an attorney at law by the name of M. Morris Moskovitz. By the undisputed evidence in the case it appears that M. Morris Moskovitz secured the confidence of Adolph Marcus to a very large degree; and in November, 1908, Moskovitz represented to Marcus, the plaintiff, that he had a client who owned real estate in the city of Scranton, and upon which real estate he desired to borrow some money, giving as security for the payment of the same the real estate mentioned. He even went so far as to take Marcus to view the property; and Marcus, on November 12 and 16, gave to Moskovitz two checks, one dated November 12, 1907, for $400, and one dated November 16, 1907, for $500, each drawn on the People's National Bank of Scranton, in the name of Charles Kirst, who was the man alleged by Moskovitz to be the owner of the property, these checks being obtained from Marcus by an alleged executed bond and mortgage and insurance policy, certificate of title and a receipt from Kirst for the amount of the checks. These checks, it is supposed, were indorsed by Moskovitz, "Charles Kirst," although that does not appear from the testimony, but it does appear from the testimony that no such person as Charles Kirst owned the property, nor, as far as this case is concerned, was this Charles Kirst in existence at that time. These two checks were both indorsed by Moskovitz as a second indorser, and they were presented to the First National Bank, and by it presented to the People's National Bank, were paid by the People's National Bank and charged up against the funds of Adolph Marcus, the plaintiff, which were on deposit in the said People's National Bank.

In September, 1908, by the same methods or means

Moskovitz obtained a check from the said Adolph Marcus, drawn to the order of Jacob Gdoweika, on the People's National Bank, for the sum of $629, and which check had indorsed upon it the name of "Jacob Gdoweika," and was also indorsed by Moskovitz, who obtained the money from the said People's National Bank, the amount of which check was also charged up against the funds of the said Adolph Marcus deposited in said bank. It appearing from the evidence that there was no such person as Jacob Gdoweika, nor did he own any such property as represented by Moskovitz when he obtained the loan, the misrepresentations as to property, deeds, mortgages, etc., being about similar to the first case.

In March, 1910, Moskovitz obtained another check from Adolph Marcus for the sum of $150, drawn to the order of Anthan Potker, which was given as a loan upon misrepresentations made by Moskovitz as to the said payee owning a property on Cedar avenue, in the city of Scranton, while in truth no such property was owned by such man, nor was any such person known to exist. This amount of money was also paid by the People's National Bank on said check, upon which the name of the payee appeared, and was also indorsed by S. Radin as second indorser.

The substance of all these acts was about this: That Moskovitz, pretending to represent clients, induced Adolph Marcus, the plaintiff, to draw these several checks on the People's National Bank, in which he had deposited funds, the said Moskovitz persuading the said Marcus that the persons whom he alleged he represented were the owners of property, and in pursuance of the fraud he produced pretended mortgages, insurance policies, etc., and in the last case represented the property to be owned by the payee, which the payee did not own at all. It was afterwards discovered by Marcus that these payees were fictitious persons; that they did not own the property they were alleged to

have owned, and they did not execute the mortgages or papers that Moskovitz presented to Marcus as having been duly and properly executed by the parties as we have before stated and as appears at large in the testimony.

Marcus, as soon as he found out the fraud had been perpetrated upon him, notified the officers of the bank and demanded that he be paid the several amounts which the People's National Bank had charged up against his funds deposited in its bank. · This the bank refused to do, and therefore this suit was brought by Adolph Marcus, the plaintiff, to recover the said several amounts, or what was the balance due upon them from said bank, alleging or contending that the checks having been paid by reason of false indorsements made upon them, the bank was liable therefor.

*Error assigned* was refusal to take off nonsuit.

*W. L. Benjamin*, of *Houck & Benjamin*, with him *A. A. Vosburg*, for appellant.—The checks were not drawn to fictitious persons, in contemplation of law, whether such persons named as payees existed or not: Snyder v. Corn Ex. Natl. Bank, 221 Pa. 599; Houser v. Natl. Bank of Chambersburg, 27 Pa. Superior Ct. 613.

But we contend that, even if all of the drawees in the checks in issue be regarded as nonexisting persons, that fact of itself does not preclude a recovery: Snyder v. Corn Ex. Natl. Bank, 221 Pa. 599; Armstrong v. Pomeroy Nat. Bank, 22 N. E. Repr. 866; First Natl. Bank of Hastings v. Farmers & Merchants Bank, 76 North W. Repr. 430; Murphy v. Metropolitan Nat. Bank, 77 North E. Repr. 693; Harmon v. Old Detroit Natl. Bank (Mich.), 17 L. R. A. (N. S.) 519, 516.

*R. L. Levy*, with him *C. H. Welles*, for appellee, cited: Snyder v. Corn Exchange Bank, 221 Pa. 599; Houser v.

National Bank of Chambersburg, 27 Pa. Superior Ct.
613.


OPINION BY HENDERSON, J., July 15, 1914:

There is no uncertainty in regard to the relation of a
bank to its depositor with reference to the payment of
the checks of the latter.  The implied agreement of the
bank is to pay such checks to the persons therein ap-
pointed to be paid.  If payable to order payment must
be made to the payee or to such other person as is the
holder by a genuine indorsement.  Where payment
from a depositor's account is made on a check contain-
ing a forged indorsement the bank remains liable to
the depositor unless the party against whom it is sought
to enforce such payment is precluded from setting up
the forgery or want of authority.  This rule is embodied
in the Notes and Bills Act of 1901.  No specification is
made either in the decisions of the Supreme Court or
in the statute of the acts which will estop the party
owning the fund from setting up a forgery, but it has
been well declared that where the loss is the result of
the drawer's own fault or neglect he has no standing to
complain of the action of the bank in paying the check.
It was said in Iron City National Bank v. Fort Pitt
National Bank, 159 Pa. 46, that "it is always a good
defense that the loss complained of is the result of the
complainant's own fault or neglect and it would require
a statute in very explicit terms to do away with so
universal a principle of law founded on so incontestable
a principle of justice."  A duty rests on a depositor
not to subject the bank to extraordinary risks with
regard to the payment of his checks, such as intrusting
a check to one who he has reason to suppose will make
a fraudulent use of it, or in so carelessly filling up a
check that it may easily be altered; and in Land, Title
and Trust Co. v. Northwestern National Bank, 196
Pa. 230, the issuing of a check to a fictitious person
was included in the class of acts which deprived the

depositor of the protection of the rule referred to. It was there said that its application is confined to cases in which the depositor has done nothing to increase the risk of the bank. This risk is increased when a check is issued to a nonexisting person, for as was stated in the case last cited the bank is deprived of the protection afforded by the fact that a bona fide holder of a check will exercise care to preserve it from loss or theft which are the ordinary risks. In the case of Snyder v. Corn Ex. National Bank, 221 Pa. 599, Mr. Justice Brown quotes with approval from Land, Title and Trust Co. v. Northwestern National Bank, supra, as to the effect of issuing a check to a fictitious person and the effect of any act done by the drawer of the check increasing the risk of the bank. There is no dispute with regard to the facts in the case before us and the application of the law as expressed in the cases cited sustains the action of the trial judge. It is conceded that the payees named in the checks did not exist; the checks were drawn by the maker payable to imaginary persons. The plaintiff having confidence in Moskovitz accepted his statements that the transactions were loans to the persons named and handed the checks to Moskovitz to be delivered to the supposed borrowers. The whole transaction was between the plaintiff and Moskovitz so far as the pretended lending of money and the payment by the plaintiff to the borrowers were concerned. The effect of the drawing of the checks on the bank was an implied representation by the drawer that the payees were existing persons and yet there could not be a genuine indorsement of such papers. It is not reasonable to charge the bank with the consequences of the payment of a forged indorsement when the plaintiff put in circulation checks which were not susceptible of a genuine indorsement. The case is one for the application of the rule that as between two innocent parties he who by his acting makes loss possible, must bear it. That the plaintiff was overconfident and that he was

cheated by Moskovitz whom he was befriending is very evident, but we are not persuaded that there is substantial ground for shifting the result of his credulity to the bank which was in no way responsible for the putting of the checks in circulation.

The judgment is affirmed.