## Houser v. National Bank of Chambersburg, Appellant.

*Banks and banking—Checks—Forgery—Delivery.*

The contract between a banker and his customer is to pay the customer's check or bills to the person or persons designated by the customer, and none other, and if a check or bill is payable to order, the banker has only authority to pay it to the payee or to another person who becomes the holder by genuine indorsement.

The reason of the rule that when a bank pays a depositor's check on a forged indorsement or a raised check, it is held to have paid it out of its own funds and cannot charge the payment to the depositor's account, is that there is an implied agreement by the bank with its depositor that it will not disburse the money standing to his credit except on his order.

Where a person to whom a check was delivered is not the person to whom the proceeds are intended to go, but is one who fraudulently pretends to be the agent of the person by whose name the payee is described in the check, the rule is that, unless the drawer was negligent in delivering the check to the supposed agent to be delivered by him to his principal, the payee named in the check, the bank will not be protected in paying it upon the forged endorsement of the latter. In such a case the question is whether, in view of the nature of the transaction and the situation of the parties, the drawer of the check omitted to exercise ordinary care and prudence.

The law of the relation between a bank and its depositor does not hold the latter to the extremely high degree of care which would make it impossible for an impostor to obtain from him a check payable to his alleged principal. While the drawer of a check may be liable where he draws the instrument in such an incomplete state as to facilitate or invite fraudulent alteration it is not the law that he is bound so to prepare the check that nobody else can successfully tamper with it. The same principle applies to the delivery of the check. Where it is not actually delivered into the hands of the payee, but is given to his pretended agent, the agent must use the care of a man of ordinary prudence in view of all the circumstances; but having done that he is not precluded by the fact that he was deceived in the transaction, which led to the giving of the check, from holding the bank to its contract with him to pay his checks only to the payee or one who claims through a genuine indorsement.

Argued Oct. 17, 1904. Appeal, No. 60, Oct. T., 1904, by defendant, from order of C. P. Franklin Co., Dec. T., 1903, No. 179, making absolute rule for judgment for want of a sufficient affidavit of defense in case of L. D. C. Houser v. National Bank of Chambersburg. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Rule for judgment for want of a sufficient affidavit of defense. Before BIDDLE, P. J., specially presiding.

The material facts alleged in the affidavit of defense are stated in the opinion of the Superior Court.

The court made absolute rule for judgment for want of a sufficient affidavit of defense.

*W. K. Sharpe*, of *Sharpe & Elder*, with him *Brewer & Ruthrauff*, and *Gehr & Gehr*, for appellant.—If by any act of negligence upon his part, as by so carelessly writing the check as to render it easily open to material alteration without leaving evident traces for detection, the depositor has furnished the opportunity for the fraud which has deceived the bank, then he must suffer the just consequence of his carelessness by bearing the loss himself: Garrard v. Haddan, 67 Pa. 82; Zimmerman v. Rote, 75 Pa. 188; Robb v. Penna. Co., 3 Pa. Superior Ct. 254.

We think we are safe in saying that under the above authorities any negligence on the part of the depositor or any act on his part which unduly increases the risk of the bank in the handling of the depositor's checks will relieve the bank from liability to the depositor for any loss.

The plaintiff is confronted with the rule that, as between two innocent parties, he who, by first acting, makes the loss possible by inducing the other to act, must bear it: States v. First Nat. Bank of Montrose, 203 Pa. 69; Robertson v. Hay, 91 Pa. 242.

The two cases, Smith v. Mechanics', etc., Bank, 6 Louisiana Annual Reports, 610, and Levy v. Bank of America, 24 Louisiana Annual Reports, 220, fully support the principle for which we contend.

A similar rule has been adopted in Malony v. Clark, 6 Kansas 82.

The question has been closely approached in Pennsylvania in two cases: Land, Title and Trust Company v. Northwestern National Bank, 196 Pa. 230, and States v. First Nat. Bank of Montrose, 203 Pa. 69.

*William S. Hoerner*, with him *Bonbrake & Zacharias*, for appellee.—The banker cannot charge his customer with any

other payments than those made in pursuance of that authority: Robarts v. Tucker, 16 Ad. & Ellis (N. S.) 560; German
Saving Bank v. Citizens' Nat. Bank, 101 Iowa, 530 (70 N. W.
Repr. 769); Harter v. Mechanics' Nat. Bank, 63 N. J. Law
578 (44 Atl. Repr. 715).

A drawer may by his own act of negligence be precluded
from recovering against a drawee bank paying on a forged indorsement, but never by his intention as to the identity of the
payee: Land Title & Trust Co. v. Northwestern Nat. Bank,
50 L. R. A. 75.

OPINION BY RICE, P. J., April 17, 1905:

The contract between a banker and his customer is to pay
the customer's check or bills to the person or persons designated by the customer, and to none other, and if a check or bill
is payable to order, the banker has only authority to pay it to
the payee or to another person who becomes the holder by genuine indorsement: United Security Life Ins., etc., Co. v. Central National Bank, 195 Pa. 586. The reason of the rule that
when a bank pays a depositor's check on a forged indorsement,
or a raised check, it is held to have paid it out of its own funds
and cannot charge the payment to the depositor's account, is
that there is an implied agreement by the bank with its depositor that it will not disburse the money standing to his credit
except on his order: Land Title and Trust Co. v. Northwestern National Bank, 196 Pa. 230. The rule is expressed in section 23 of our bills and notes act of 1901, in the following language: "When a signature is forged or made without the authority of the person whose signature it purports to be, it is
wholly inoperative, and no right to retain the instrument, or
to give a discharge therefor, or to enforce payment thereof,
against any party thereto, can be acquired through or under
such signature, unless the party against whom it is sought to
enforce such right is precluded from setting up the forgery or
want of authority." The statute recognizes the principle well
established by former decisions that the depositor may be precluded from setting up against the bank the forgery of his
own signature or that of the payee to the check, but does not
undertake to specify the acts that will have that effect. "It
is always a good defense that the loss complained of is the re-

sult of the complainant's own fault or neglect, and it would require a statute in very explicit terms to do away with so universal a principle of law founded on so incontestable a principle of justice:" Iron City National Bank v. Fort Pitt National Bank, 159 Pa. 46. It is quite clear that the act of 1901 left this principle in full force. Is it applicable here? The relation of the depositor to the bank implies a duty on his part to subject the bank to no extraordinary risks with regard to the payment of his checks, as for example intrusting a check to one whom he has reason to suppose will make a fraudulent use of it, or so carelessly filling up a check that it may be readily altered: Land Title and Trust Co. v. Northwestern National Bank, 196 Pa. 230. It was held in the same case that a bank will be protected in the payment of a check on a forged indorsement where the person who committed the forgery and received the money was in fact the person to whom the drawer delivered the check, and whom he believed to be the payee named. The distinction between the class of cases in which this doctrine as to the actual intent of the drawer is maintained and the present is apparent. There the intention with which the drawer issued the check has been carried out; the person has been paid to whom he intended payment should be made; and the loss is due, not to the bank's error in failing to carry out his intention, but primarily to his own error into which he was led by the deception previously practiced upon him. Here the intention with which the drawer issued the check has not been carried out; payment was not made to the person designated in the check or her indorsee, nor to the person to whom the drawer actually intended payment to be made. The two Louisiana cases—Smith v. Mechanics' etc. Bank, 6 La. Ann. 610; Levy v. Bank of America, 24 La. Ann. 220— cited by the appellant's counsel are more closely analagous to the present, but not entirely so, as will be seen from the following summary of the decisions taken from 2 Morse on Banks and Banking, sec. 474: "In each case the instrument bought by the check was a forgery, and the purchasers issued their checks to unknown persons, but in the name of the payees of the forged instruments, for the acknowledged purpose of throwing upon the bank the responsibility of paying the right party, and saving themselves the trouble of inquiry." In the

opinion rendered in the Smith case, upon motion for rehearing the court said: "as it was no part of the contract between the plaintiff and the bank that he should have the right to draw checks in that form, the bank might go behind the check and justify the payment by showing that it had been made to the creditor whom the plaintiff intended to pay." Observe, that the impostor was a stranger to the drawer and that if the transaction had been a valid one he would have been the real creditor of the drawer. The doctrine of the last two decisions, even if conceded to be in accordance with the law of Pennsylvania, falls short of controlling a case where the person to whom the check was delivered was not the person to whom the proceeds were intended to go, but was one who fraudulently pretended to be the agent of the person by whose name the payee was described in the check. In such a case the true rule is that, unless the drawer was negligent in delivering the check to the supposed agent, to be delivered by him to his principal, the payee named in the check, the bank will not be protected in paying it upon the forged indorsement of the latter. The case in hand belongs to this class, and the question is whether, in view of the nature of the transaction and the situation of the parties, the drawer of the check omitted to exercise ordinary care and prudence. The material facts as alleged by the defendant are as follows : Sarah A. Flemming, who resided in the country several miles from the county seat, was the owner of part of a judgment entered in the common pleas of Franklin county. Howard A. Noble, a practicing attorney of that county, who had acted for Mrs. Flemming, his grandmother, in other transactions, including the investing and reinvesting of her money, falsely represented to Mr. Zacharias, another member of the same bar, that Mrs. Flemming desired to sell her part of the judgment, and asked Mr. Zacharias whether his client, the plaintiff, would be willing to buy it. Mr. Zacharias consulted his client and examined the record, and a few days later they and Noble had a meeting at which the plaintiff agreed to buy the judgment. Mr. Zacharias then prepared an assignment in due form and delivered it to Noble for the purpose of having it executed by Mrs. Flemming, his supposed client. He also drew a check payable to the order of Sarah A. Flemming for the purchase price, which the plain-

tiff signed and left in the custody of his attorney. The next day Noble delivered to the plaintiff's attorney the assignment purporting to have been signed by Mrs. Flemming and witnessed by her son, both of which signatures were forged, and thereupon was given the check. On the same day Noble forged on the back of the check the signature of the payee and had it cashed at another bank in the same town, which indorsed it and sent it to the defendant, the bank upon which it was drawn. The latter paid it and charged it to the account of the plaintiff. To hold that the plaintiff was negligent in closing the transaction without having seen Mrs. Flemming and the subscribing witness affix their signatures to the paper, or having inquired of her as to the authority of Noble to negotiate the sale and assignment of her judgment, and that this negligence was the proximate cause of the mispayment of the check would be going farther than any authoritative decision to which our attention has been called or of which we are aware. True, the loss would not have occurred if he had taken the suggested precaution, and perhaps it would have been his duty to take it if Noble had been a stranger, or if from his general reputation or other facts known to the plaintiff the latter had had reason to doubt his honesty. But it is not alleged that he had ever done anything of the kind before, or that his general reputation for honesty amongst the members of the same bar or of the county at large was not good, or that the plaintiff had knowledge of any fact which ought to have made a man of ordinary prudence suspicious of the genuineness of the signatures to the assignment, or doubtful whether Noble would deliver the check to his alleged client, the payee. It is to be observed further that throughout the transaction the plaintiff had and followed the advice of competent counsel who was a member of the same bar; and we venture to affirm that, having regard to all the circumstances, the course pursued by him and his attorney was neither unusual nor extraordinary. We cannot give our assent to the extreme proposition urged by the appellant's counsel, that the mere fact that a man has allowed himself to be duped implies some degree of negligence on his part. The law of the relation between a bank and its depositor does not hold the latter to the extremely high degree of care which would make it impossible for an

impostor to obtain from him a check payable to his alleged principal.  While the drawer of a check may be liable where he draws the instrument in such an incomplete state as to facilitate or invite fraudulent alteration, it is not the law that he is bound so to prepare the check that nobody else can successfully tamper with it: Leas v. Walls, 101 Pa. 57; Robb v. Pennsylvania Co., 3 Pa. Superior Ct. 254; Critten v. Chemical National Bank, 171 N. Y. 219, 163 N. E. Repr. 969.  We think the same principle applies to the delivery of a check.  Where it is not actually delivered into the hands of the payee, but is given to his pretended agent, the drawer must use the care of a man of ordinary prudence in view of all the circumstances; but having done that he is not precluded by the fact that he was deceived in the transaction, which led to the giving of the check, from holding the bank to its contract with him to pay his checks only to the payee or one who claims through a genuine indorsement.  Applying this principle here, we think the court was right in holding that the facts alleged by the defendant do not constitute such negligence on the plaintiff's part as would prevent him from recovering the amount of his deposit.  The exact point raised in this case does not seem to have been decided in any of the Pennsylvania decisions to which our attention has been called.  But the conclusion we have reached is supported by several well considered decisions of the highest courts of other states, amongst which may be mentioned Atlanta National Bank v. Burke, 81 Ga. 597 (7 S. E. Repr. 738); German Savings Bank v. Citizens' National Bank, 101 Iowa, 530 (70 N. W. Repr. 769); First National Bank v. Pease, 168 Ill. 40 (48 N. E. Repr. 160); Harter v. Mechanics' National Bank, 63 N. J. L. 578 (44 Atl. Repr. 715); Armstrong v. Pomeroy National Bank, 46 O. St. 512 (22 N. E. Repr. 866). See also note to Land Title and Trust Co. v. Northwestern National Bank, 50 L. R. A. 75 at page 80.

Judgment affirmed.