## Land Title Bank & Trust Company *v.* Cheltenham National Bank, Appellant, et al.

Argued April 19, 1949. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Jones, JJ.

*Frederick H. Spotts,* with him *William B. Farran, Philips, Farran & McKeag* and *Pepper, Bodine, Stokes & Hamilton,* for appellant.

*Herbert A. Barton,* with him *Swartz, Campbell & Henry,* for Land Title Bank and Trust Company et al., appellees.

*Edward H. Cushman,* with him *Richard A. Smith,* for Maryland Casualty Company, appellee.

*John C. Phillips,* for Edward W. Sliker, appellee.

Opinion by Mr. Justice Horace Stern, May 23, 1949:

One Vera Keller was the owner of a property on Shawnee Street in Philadelphia. Without her knowl-

edge or authority one Bennewitt, who was a real estate broker, applied to Willow Highlands Company for a loan of $8,000 on that property. The loan was approved and application made by the lending company to plaintiff, the Land Title Bank & Trust Company, for title insurance guaranteeing the lien of the mortgage. At the settlement in plaintiff's office Vera Keller did not appear. Bennewitt, representing that she was merely his "strawman", produced a bond and mortgage purporting to be signed by her and the mortgage acknowledged before one Sliker, a notary public; her signatures to the bond and mortgage were forged and she had not in fact acknowledged the mortgage. The mortgagee deposited the sum of $8,000 with plaintiff, which issued its title policy insuring the lien of the mortgage. Plaintiff drew a check on itself in the sum of $7,904.50 payable to the order of Vera Keller and delivered it to Bennewitt, who indorsed the name of Vera Keller thereon and cashed it at the Cheltenham National Bank, the defendant in the present action. Defendant delivered the check to the Federal Reserve Bank of Philadelphia and received from it the amount thereof which in turn was paid by plaintiff to the Federal Reserve Bank. Upon discovery that the indorsement of Vera Keller's name was a forgery plaintiff promptly gave notice to that effect and made demand upon defendant for reimbursement.

Substantially the same transaction occurred with reference to another property owned by Vera Keller on Marshall Street in Philadelphia. Without her knowledge or authority Bennewitt applied to the Cayuga Federal Savings & Loan Association of Philadelphia for a loan on that property of $5,500. The loan was approved and application made by the Association to plaintiff for title insurance. Settlement was made in plaintiff's office; Vera Keller, of course, did not appear and Bennewitt again produced a bond and mortgage with forged signatures, the mortgage falsely purporting to

have been acknowledged before himself, he being a notary public. The Association deposited the sum of $5,500 with plaintiff, which issued its policy insuring the mortgage lien, drew a check on itself in the sum of $5,336.38 payable to the order of Vera Keller, and delivered it to Bennewitt. Bennewitt forged her name as indorser and cashed the check at defendant bank. This check then took the same course as the other one, and, having been paid by plaintiff, the latter, upon discovery of the forgery, made demand upon defendant for repayment. As both such demands were disregarded plaintiff brought the present action and obtained judgment on the pleadings for the respective amounts of $7,904.50 and $5,336.38, or a total, with interest, of $14,319.72. From that judgment defendant appeals.

The applicable rule of law is so firmly settled that it needs no elaborate citation of authorities to support it. If a check is made payable to the order of a person named therein the absolute duty of a bank honoring the check is to pay only to that payee or according to his order, and no amount of care to avoid error will protect it from liability if it pays to a wrong person; it must ascertain and act upon the genuineness of the indorsement at its peril. Section 23 of the Negotiable Instruments Law of 1901, P. L. 194, provides that "When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority." And the Act of April 5, 1849, P. L. 424, section 10, which Act was not repealed by the Negotiable Instruments Law (*Union National Bank v. Franklin National Bank,* 249 Pa. 375, 94 A. 1085; *Market Street Title & Trust Co. v.*

*Chelten Trust Co.*, 296 Pa. 230, 145 A. 848), provides that, where the signature of an indorser on a check is forged and the amount by reason thereof is erroneously paid, the payer shall be legally entitled to recover from the person previously holding or negotiating the same the amount so paid, together with interest thereon from the time that demand shall have been made for repayment.

Defendant attempts to assimilate the present situation to the so-called "impostor" cases [1] which hold that a bank is not liable for the payment of a check on a forged indorsement where the person who committed the forgery and received the money was in fact the person to whom the drawer delivered the check *and whom he believed to be the payee named.* Here, however, plaintiff did not intend or believe Bennewitt to be the payee; on the contrary, it believed that it was dealing with Vera Keller; the checks were made payable to her order and entrusted to Bennewitt merely for the purpose of delivery to her. Defendant, having made payment to the wrong person on a forged indorsement, obtained no title to the checks and consequently no right to collect thereon from the plaintiff drawee, and, such collection having nevertheless been effected, plaintiff is entitled to recover the amount thus erroneously paid: *National Union Fire Insurance Co. v. Mellon National Bank,* 276 Pa. 212, 119 A. 910; *Real Estate Land Title & Trust Co. v. United Security Trust Co.,* 303 Pa. 273, 154 A. 593. The latter case is particularly apposite; in fact it is controlling, the facts being strikingly similar to those here involved. There, as here, a person applied for and obtained a mortgage loan from

---

[1] *Land Title & Trust Co. v. Northwestern National Bank,* 196 Pa. 230, 46 A. 420; *Land Title & Trust Co. v. Northwestern National Bank,* 211 Pa. 211, 60 A. 723; *Market Street Title & Trust Co. v. Chelten Trust Co.,* 296 Pa. 230, 145 A. 848; *North Philadelphia Trust Co. v. Kensington National Bank,* 328 Pa. 298, 196 A. 14.

a company without the knowledge or consent of the owners of the property; there, as here, the mortgagee deposited the amount of the loan with the plaintiff company where settlement was to be made; there, as here, the alleged "agent" produced a bond and mortgage with forged signatures of the owners and false acknowledgments; there, as here, the plaintiff company issued its policy of title insurance to the mortgagee, drew its check for the amount of the mortgage to the order of the owners, and entrusted it to the "agent" for delivery to her; there, as here, the "agent" forged the payee's name and collected on the check at the defendant's bank; there, as here, when the forgery was discovered the plaintiff company notified the defendant bank thereof and demanded repayment of the amount of the check. On the pleadings setting forth these facts the court below rendered judgment for the plaintiff which this court affirmed.

Defendant's attempt to escape liability is based principally upon the concluding clause in section 23 of the Negotiable Instruments Law above quoted: "unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority". It is contended that plaintiff is so precluded because of alleged negligence on its part in two respects: (1) in not requiring the personal appearance of Vera Keller at the mortgage settlement, and (2) in delivering the check to Bennewitt for transmission to Vera Keller instead of sending it to her through the mail. There are several reasons why the argument thus advanced by defendant is untenable. In the first place, the facts do not disclose anything that could fairly be characterized as negligence on the part of plaintiff. It was said by RICE, P. J., in *Houser v. National Bank of Chambersburg*, 27 Pa. Superior Ct. 613, 618: "We cannot give our assent to the extreme proposition urged by the appellant's counsel, that the mere fact

that a man has allowed himself to be duped implies some degree of negligence on his part." Plaintiff had no reason to suspect that each of two notaries public would, and in this case did, falsely certify that the mortgagor had personally appeared before him and acknowledged the mortgage; it had no reason to doubt the genuineness and validity of the documents, and to have required the actual appearance of the mortgagor at the settlements would have availed nothing by way of protection because, as has sometimes happened, the person thus appearing might, and here undoubtedly would, have been herself an impostor so that even then there would have been required further outside investigation to determine her identity, or lack of identity, with the owner of the properties. As to turning the check over to Bennewitt for delivery to the payee, since no reason then existed to give rise to a suspicion that he was dishonest, there was no apparent need for plaintiff to mail the check to the mortgagor rather than entrust it to Bennewitt. It has frequently been held that there is nothing irregular in entrusting a check to a person in order to deliver it to the payee, in the absence of any good ground for belief that he would make a fraudulent use of it. If such a person indorses the name of the payee without authority, and a bank cashes the check for him on his forged indorsement, it, and not the drawer, is at fault, for there is no duty on the part of the drawer to see to it that a person who may turn out to be a forger does not get possession of the check:—Zollmann on Banks and Banking, Vol. 6, p. 458, §4236; *Real Estate Land Title & Trust Co. v. United Securty Trust Co.*, 303 Pa. 273, 154 A. 593; *Houser v. National Bank of Chambersburg*, 27 Pa. Superior Ct. 613, 619; *City Bank v. Hamilton National Bank of Washington*, 108 F. 2d 588, 590; *State Bank of Chicago v. Mid-City Trust and Savings Bank*, 232 Ill. App. 186, 191.

Another principle which makes defendant's contention unavailable is that, in any event, the only kind of negligence that precludes the drawer of a check from recovery from the bank which has cashed it on a forged endorsement is negligence in respect to the preparation of the check itself, as for example, where the check is drawn in such manner that the name of the payee may easily be altered, or where there have been left unfilled blanks, or where there is some similar act of carelessness that facilitates the commission of the fraud by which the proceeds of the check are improperly obtained: see *Washington Loan & Trust Co. v. United States*, 134 F. 2d 59, 63.

Finally, even if plaintiff was negligent in the sense that it allowed itself to be duped in accepting from Bennewitt the fraudulently executed bond and mortgage, such negligence was not in any way related to or connected with the act of defendant in paying out on the forged indorsement; by that act it violated an absolute and positive duty. Defendant had nothing whatever to do with the transactions in plaintiff's settlement department, had indeed no knowledge thereof, and could not possibly, therefore, have acted in reliance thereon; the mortgage settlements and the improper cashing of the checks had no relation to one another of cause and effect; they were wholly distinct transactions. The negligence of the drawer of a check is immaterial unless it is such as directly and proximately affects the conduct of the bank in the performance of its duties, and here there was no act of plaintiff which misled defendant into believing that it could safely cash the check for Bennewitt. There is a veritable host of authorities to the effect that where, by fraud or chicanery of any sort, one is led to issue a check to the perpetrator of the fraud, that fact does not relieve from liability the subsequent act of a bank in cashing the check on an indorsement of the payee forged thereon by the person who deluded the drawer. A number of such cases, naturally varying in

their circumstances but all proclaiming and following this principle, are cited in the note.[2]

It is clear, then, that the court below was correct in determining that nothing in the facts set forth by defendant was sufficient to deprive plaintiff of its right to recover the amounts it had erroneously paid on the checks in reliance upon defendant's warranty that the payee's indorsements thereon were genuine,—a warranty express in the case of one of the checks by defendant's indorsed guaranty thereon of prior indorsements, and a warranty implied in the case of the other check by defendant's negotiation and transfer thereof.

Defendant brought upon the record three additional parties defendant—the notary Sliker, the Maryland

[2] *Second National Bank of Pittsburg v. Guarantee Trust & Safe Deposit Co. of Shamokin*, 206 Pa. 616, 620, 621, 56 A. 72, 73; *National Union Fire Insurance Co. v. Mellon National Bank*, 276 Pa. 212, 119 A. 910; *Real Estate Land Title & Trust Co. v. United Security Trust Co.*, 303 Pa. 273, 154 A. 593; *Commonwealth v. Globe Indemnity Co.*, 323 Pa. 261, 185 A. 796; *Houser v. National Bank of Chambersburg*, 27 Pa. Superior Ct. 613; *National Metropolitan Bank v. Realty Appraisal & Title Co.*, 47 F. 2d 982; *City Bank v. Hamilton National Bank of Washington*, 108 F. 2d 588; *Washington Loan & Trust Co. v. United States*, 134 F. 2d 59; *Murphy v. Metropolitan National Bank*, 191 Mass. 159, 77 N. E. 693; *Jordon Marsh Co. v. National Shawmut Bank*, 201 Mass. 397, 87 N. E. 740; *Gutfreund v. East River National Bank*, 251 N. Y. 58, 167 N. E. 171; *State Bank of Chicago v. Mid-City Trust & Savings Bank*, 232 Ill. App. 186; *Open Shop Employing Printers Association of Chicago v. Chicago Trust Co.*, 263 Ill. App. 190; *United States Cold Storage Co. v. Central Manufacturing District Bank*, 343 Ill. 503, 175 N. E. 825; *Moultrie Banking Co. v. Moore*, 172 Ga. 368, 157 S. E. 685; *Greenville National Exchange Bank v. Nussbaum*, 154 S. W. 2d 672 (Tex. Civ. App.); *Los Angeles Investment Co. v. Home Savings Bank of Los Angeles*, 180 Cal. 601, 182 P. 293; *Harlem Co-Operative Building & Loan Association v. Mercantile Trust Co.*, 31 N. Y. S. 790; Zollman on Banks & Banking, Vol. 6, pp. 478, 479, §4281; Michie on Banks & Banking, Vol. 5, pp. 533-535, §280; see also *American Surety Co. of New York v. First National Bank of Montgomery*, 203 Ala. 179, 82 So. 429.

Casualty Company, which was the surety on Sliker's notary public bond, and the Indemnity Insurance Company of North America, which was the surety upon the notary public bond of Bennewitt. Defendant filed complaints against these additional defendants setting forth that each of the notaries had certified that Vera Keller had appeared personally before him and had acknowledged the mortgage to be her act and deed whereas in fact she had not personally appeared before either of them and had never made any such acknowledgments. Accordingly it was alleged that each of these added defendants was liable to plaintiff in the respective amounts which the latter was claiming from defendant, and was also liable over to defendant if the latter should be held liable to plaintiff. The additional defendants filed preliminary objections to the complaints, which objections were sustained by the court and it was held that the additional defendants were not proper parties to the suit and should be stricken from the record. Defendant, assigning this action of the court below as error, relies upon Pa. R. C. P. 2252(a), which provides that "In any action the defendant . . . may file as of course a præcipe for a writ to join as an additional defendant any person not a party to the action who may be alone liable or liable over to him on the cause of action declared upon . . ." But such reliance is obviously misplaced because defendant ignores the vital words: *"the cause of action declared upon."* The rule in question, like the original Act of April 10, 1929, P. L. 479, which it replaced, was not intended to complicate legal proceedings by combining entirely separate causes of action in one suit; the cause of action as to which the original defendant may bring in an additional defendant must still be the cause of action declared on by the plaintiff in the action against the original defendant: *Jones v. Wohlgemuth,* 313 Pa. 388, 390, 169 A. 758, 759; *Murray v. Pittsburgh Athletic Co.,* 324 Pa. 486, 497, 498,

188 A. 190, 195; *Volta v. Markovitz Bros., Inc.,* 351 Pa. 243, 40 A. 2d 388; *Murray v. Lavinsky,* 120 Pa. Superior Ct. 392, 395, 182 A. 803, 804. Because of the similarity in the wording of the new rule and that of the Act of 1929 it was said in *Volta v. Markovitz Bros., Inc.,* 351 Pa. 243, 245, 40 A. 2d 388, 389, that "The rules of Civil Procedure do not change the law as we declared it in the cases above cited" [viz. *Murray v. Pittsburgh Athletic Co.,* 324 Pa. 486, 188 A. 190, and *Dively v. Penn-Pittsburgh Corporation,* 332 Pa. 65, 2 A. 2d 831]. Plaintiff's action against defendant under the law governing negotiable instruments, and any right of recovery which might possibly be asserted by either plaintiff or defendant against the notaries public and their bondsmen, are so utterly distinct and unrelated that their joinder would inevitably result in transforming the simple issue between the original parties into issues of a totally different nature and governed by wholly different considerations. Moreover the bonds of notaries public are payable to the Commonwealth (Act of June 10, 1931, P. L. 480) and any judgment thereon must be entered in favor of the Commonwealth as legal plaintiff, which judgment would remain for the satisfaction of all persons entitled to the benefit of the bond; this is because any other person having a cause of action thereon would have the right to be made a party and to establish his particular injury: Act of June 14, 1836, P. L. 637, section 6, subsection 9; *Commonwealth ex rel. Schuylkill County v. Horan (No. 1),* 39 Pa. Superior Ct. 575. Even if, therefore, it were possible to conceive of an action on the notaries' bonds for failure to execute and perform the duties of their office as being "the cause of action declared upon" which arose from defendant's cashing of the checks on forged indorsements, it is evident that even procedural difficulties would make it impossible to adjudicate two such issues in the same suit.

Judgment affirmed.