## Commonwealth *v.* National Bank & Trust Company of Central Pennsylvania.

Argued December 5, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Richard H. Wix,* with him *Metzger, Wickersham, Knauss & Erb,* for appellant.

*Heath L. Allen,* with him *William E. Miller, Jr.,* and *Metzger, Hafer, Keefer, Thomas and Wood,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., May 31, 1973:

We are asked to determine the propriety of the action of the Court of Common Pleas of Dauphin County in (1) granting appellee a new trial; and (2) refusing to grant appellant bank's motion for a compulsory nonsuit on the facts in this case.

The genesis of this controversy was the institution by the Commonwealth of an action in assumpsit to recover $21,138.07 with appropriate interest from National Bank & Trust Company (collecting-bank) which sum represents an amount allegedly paid out improperly by the collecting-bank on checks whose endorsements had been forged.

The Department of Transportation (formerly the Department of Highways) in the usual course of its business delivers checks drawn on several banks throughout the Commonwealth from Harrisburg to its various district and county offices throughout the state for distribution to named payees. Some checks are periodically returned for a variety of reasons such as the death of a payee, or an error in amount, or issuance to individuals on leave without pay.

In 1963 and 1964, an individual who was employed by the Department as a Supervisor of the Payroll, intercepted one hundred and thirty-six (136) of the returned checks totalling $21,138.07 and forged the endorsements of the named payees. He presented the checks drawn on twenty different banks to the appellant and received either cash or a credit on his ac-

count.[1] Appellant then presented the checks to the various drawee banks for collection and received the stated amounts. The drawee banks then debited the accounts of the Commonwealth.

The Commonwealth obtained assignments from the several drawee banks of all the rights of the drawee banks against the appellant. Subsequently, the Commonwealth brought this action both in its own right and on the basis of its assigned rights seeking to recover the sums paid out together with interest thereon.

Appellant collecting-bank filed preliminary objections to the complaint. These were overruled[2] and the matter was sent to trial. The case was submitted to a jury for determination and it returned a verdict in favor of the collecting-bank. The Commonwealth motioned for judgment *non obstante verdicto* (n.o.v.) and for a new trial. The collecting-bank also filed a motion for judgment n.o.v. in order to preserve the legal positions it asserted on preliminary objections.

Reviewing the proceedings, the Court of Common Pleas of Dauphin County, by Judge LIPSITT, granted the motion for new trial. The Court was of the opinion that its charge to the jury on the issue of the negligence of the Commonwealth was erroneous in that it directed the jury's inquiry into the area of ordinary or conventional negligence when, in fact, it felt a higher degree of negligence must be found before recovery on the complaint was precluded. The collecting-bank appeals that decision to this Court. We hold that the decision must be affirmed.

National Central does not deny that ordinarily a collecting-bank must bear the loss occasioned by the forgery of a payee's endorsement. As a defense to the

---

[1] The record shows that he received cash for one hundred and thirty-two of the checks and that four were credited to his account.

[2] 90 Dauph. 71 (1968).

claim asserted by the Commonwealth here, the collecting-bank relies on §3-406 of the Uniform Commercial Code[3] which provides: "Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business." The collecting-bank contends that the system of conducting business by the Commonwealth was negligent in that it allowed this situation to develop and therefore it is precluded from recovering under the provisions of §3-406.

The degree of negligence which must be proved in order to deny recovery under §3-406 is the issue. The charge to the jury was, as the trial court judge concedes, somewhat confusing. The jury was directed to understand the law to be that the negligence required in order to preclude recovery was such that directly and proximately affected the conduct of the bank. Other explanations and directions in the charge, however, instructed the jury to make a determination of ordinary negligence. In review, the court below concluded that this was error asserting that §3-406 speaks of negligence which "substantially contributes" to the making of an unauthorized signature. We agree.

It is clear that under pre-code law, the negligence which would deny a drawer's recovery was such that directly and proximately affects the conduct of the bank in the performance of its duties. *Land Title Bank & Trust Company v. Cheltenham National Bank,* 362 Pa. 30, 66 A. 2d 768 (1949).

---

[3] Act of April 6, 1953, P. L. 3, §3-406, as amended, 12A P.S. §3-406.

*Thompson Maple Products, Inc. v. Citizens National Bank*, 211 Pa. Superior Ct. 42, 234 A. 2d 32 (1967), recognized that the Code effected a change in the standard of negligence required. There the court, in considering the negligence required under the Code said: "Had the legislature intended simply to continue the strict estoppel doctrine of the pre-code cases, it could have employed the term 'precluded,' without qualification, as in §23 of the old Negotiable Instruments Law, 56 P.S. §28 (repealed). However, it chose to modify that doctrine in §3-406 by specifying that negligence which *'substantially contributes to . . . the making of an unauthorized signature . . .'* will preclude the drawer from asserting a forgery. (Emphasis retained.) The Code has thus abandoned the language of the older cases (negligence which 'directly and proximately affects the bank in passing the forgery') and shortened the chain of causation which the defendant bank must establish." 211 Pa. Superior Ct. at 47, 234 A. 2d at 34. The court thus lightened the burden on a defending collecting-bank in showing negligence by the drawer but it did not, as the appellant urges upon us here, reduce the standard to ordinary negligence.

As noted, the Code requires negligence which substantially contributes to the making of an unauthorized signature and the official comment to that section clearly indicates that no attempt is made to define negligence which will contribute to an alteration. This question is left to the court or jury to determine in consideration of the circumstances in each particular case. We conclude that a finding of more than ordinary negligence is necessary under the language of §3-406 before that section operates to preclude recovery on a forged endorsement. The jury here should have been instructed in terms of negligence which substan-

tially contributes to the making of an unauthorized signature and that, in fact, was not done.[4]

*Thompson, supra,* does not contravene this conclusion but, indeed, supports it. The fact situation there involved the delivery of logs by independent shippers to a manufacturing concern. The manufacturer permitted the haulers to deliver both the original and the duplicate of a scaling slip which showed the number of logs which had been delivered to the company office when it would have been prudent to retain at least one slip. This easily afforded the haulers the opportunity to alter the instruments to show that money due exceeded the value of the load delivered. Moreover, the company, without giving specific authorization, regularly entrusted payment checks for goods received to the shippers. The court in *Thompson* concluded that neither practice in isolation was sufficient to show negligence under §3-406, but considering them jointly, the standard was met. The court said that the conduct was analogous to giving blank checks to a potential forger. We consider that the court called for a higher standard than ordinary negligence.[5]

Since the court below did not commit an error of law, this Court will not disturb its order granting a new trial. The grant of a new trial lies within the inherent power of the trial court, and upon review, this Court will not interfere with the exercise thereof unless there has been a clear abuse of discretion or an

---

[4] We note that an analogy to *Hardex-Steubenville Corp. v. Western Pennsylvania National Bank,* 446 Pa. 446, 285 A. 2d 874 (1972), is inapposite as the Court in that case was not construing the same Code section. The section there involved did not contain the language "substantially contributes" but in fact imposed a standard of "ordinary" care.

[5] *See generally Northwest National Bank v. Boecking Construction Co.,* 361 P. 2d 686 (Okla. 1961); *Greenville National Exchange Bank v. Nussbaum,* 154 S.W. 2d 672 (Tex. Civ. App. 1941).

error of law which necessarily controlled the result. *Smalich v. Westfall*, 440 Pa. 409, 269 A. 2d 476 (1970). There can be no question that a new trial was proper when the jury determination was founded upon an incorrect instruction of the law.

Appellant's next contention is that the lower court erred in refusing to grant its motion for a compulsory nonsuit. Resolution of this issue necessitates the consideration of the question of what relief is available to a drawer of a check against an intermediate bank which honors the check on a forged endorsement and collects the stated amount from the drawee bank. Must the drawer institute an action against the drawee bank and must the drawee bank in turn move against the collecting-bank or is a collecting-bank directly liable to a drawer upon payment on a forged instrument? A review of the jurisdictions reveals a split of authority on this issue with ultimate decisions often being based on the form of action involved.[6] Prior case law on this issue prevails when as here, the Code makes no specific provision covering the issue.

On the theory of money had and received, recovery has been allowed where a collecting-bank improperly pays out funds upon a forged endorsement which eventually were charged to the account of the drawer. *Nussbaum, supra. See also Washington Mechanics' Saving Bank v. District Title Insurance Co.*, 65 F. 2d 827 (D.C. Cir. 1933) ; *Railroad Building Loan and Savings Assoc. v. Bankers' Mortgage Co.*, 142 Kan. 564, 51 P. 2d 61 (1935). Recovery has been denied under the same form of action on the theory that the money received by the collecting-bank belonged not to the drawer

---

[6] The form of action as framed by the complaint in this case is in assumpsit for money had and received. This Court, therefore, will not here consider the relative merit of recovery under other forms of actions such as conversion. *See* Annotation 99, A.L.R. 2d 637; Annotation 23, A.L.R. 3d 932.

but to the drawee bank. The drawer, the court felt, could demand of the drawee a recredit of his account and upon drawee's failure to do so, he could proceed against the drawee. In short, the drawer has rights against the drawee and he in turn may proceed against the collecting-bank. *Stone & Webster Engineering Corp. v. First National Bank & Trust Co.*, 345 Mass. 1, 184 N.E. 2d 358 (1962). Other cases have looked to the lack of privity between a drawer and a collecting-bank in denying recovery. *Low v. Merchants National Bank & Trust Co.*, 24 A.D. 2d 322, 266 N.Y.S. 2d 74 (1966).

Although there is attractive reasoning to support adoption of this theory, we find that the legal assignment makes it unnecessary to rely on that rationale. These assignments effectively eliminate the problems which arise in cases where recovery was denied. In addition, assignments being absent these cases are not controlling.

Assignments are not prohibited by the Code and appellant here advances no compelling argument which obviate their significance. The assignments here relate only to the legal rights of the drawee as against the collecting-bank. They do not affect rights or defenses that may be asserted by the drawer under §§3-406, 4-406 of the Code.

We find appellant's final contention to be without merit.

Affirmed.

---

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent.

The trial court and the majority have concluded that the phrase "any person who by his negligence substantially contributes" used in Section 3-406 of the U.C.C. establishes a standard of "more than ordinary negligence," or a "higher standard than ordinary neg-

ligence." This holding is not only contrary to the express words of the Code in which the adjective "substantially" modifies the word "contributes," not the word "negligence"; but it imposes upon jurors the impossible task of determining what, to quote the majority opinion, is "more than ordinary negligence," or "a higher standard than ordinary negligence," terms which this writer has never seen defined anywhere.

Negligence should not be classified in differing degrees. It either exists or it is absent and the jury should not be invited to speculate on the degree of negligence existing. *See Cody v. Venzie,* 263 Pa. 541, 107 A. 383 (1919); *Ravis v. Shehulskie,* 339 Pa. 161, 14 A. 2d 70 (1940). *See also Subcommittee Notes to Civil Instruction 3.01,* Pennsylvania Supreme Court Committee for Proposed Standard Jury Instructions, Draft of November 27, 1972, published March 22, 1973.

Section 3-406 of the U.C.C. clearly establishes the rule of the Restatement and of Pennsylvania both as to negligence and causation. It employs the unembellished word "negligence" which in Pennsylvania and by the Restatement means the absence of ordinary care which a reasonably prudent person would exercise in the circumstances. It provides that the negligence should "substantially contribute" which is the equivalent of the phrase "substantial factor" used by the Restatement. *See* Restatement of Torts, Sections 284 and 431.

*Land Title Bank and Trust Company v. Cheltenham National Bank,* 362 Pa. 30, 66 A. 2d 768 (1949), cited by the majority, does not speak of other than ordinary negligence.

Judge WILKINSON, JR., and Judge BLATT join in this dissenting opinion.